UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Aliyah Anderson, individually and on behalf of all others similarly situated, <br><br>                         Plaintiff, <br><br> - against - <br><br> Unilever United States, Inc., <br><br>                         Defendant | 7:21-cv-03117-KMK <br><br><br> First Amended <br> Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Unilever United States, Inc. ("defendant") manufactures, distributes, markets, labels and sells "Deep Moisture Bodywash" represented as containing "skin-natural nourishers" and being "microbiome gentle" under the Dove brand ("Product").

2. According to global chemical conglomerate BASF, which supplies ingredients to cosmetic companies, "[I]nterest for the term 'Microbiome' has been increasing worldwide, as indicated by Google searches" from 2004 until the present.[1]

3. Studies by cosmetic ingredient manufacturer Givaudan show that almost 70% of consumers are familiar with the importance of the skin microbiome and believe it is important to maintain a balance amongst the microorganisms on one's skin.

4. BASF analyzed prices of cosmetic products, including body moisturizers and bath care, and determined that the average price/unit of products with microbiome claims was significantly and substantially higher than products without microbiome claims.

---

[1] BASF, Microbiome in Personal Care Market: Insights, Market Products, Consumer Claims and BASF Solutions, Florham Park, NJ, Oct. 2019.



5. Additionally, "[S]tatistical analysis reveals that products with microbiome in claim language command an even higher price" than products without microbiome claims.

6. In the context of cosmetic products, the International Cooperation on Cosmetics Regulation ("ICCR") concluded that consumers expect products which are self-described as "microbiome gentle" to contain 100% natural ingredients.[2]

7. This is because consumers believe that synthetic ingredients are harmful to the skin's microbiome.

8. The Product's website and marketing tout its salutary effect on the "microbiome," which consists of "a community of billions of friendly living microorganisms, also known as skin flora."[3]

9. According to defendant, the microbiome is "an invisible eco-system that lives on the skin that's working to help keep it healthy and in good condition."

10. The back of the Product states, "Our moisturizing and microbiome gentle formula provides instant softness and lasting care for your skin" and "Microbiome Gentle" next to a double

---

[2] ICCR, Report for the International Cooperation on Cosmetics Regulation Microbiome and Cosmetics: Survey of Products, Ingredients, Terminologies and Regulatory Approaches, Sec. 5.2.4.
[3] An introduction to skin microbiome from Dove.

helix.




11. The Product's advertisements promote its benefits towards the microbiome:

- "Start your year with a healthy microbiome;"

- "Your microbiome is a protective layer that helps keep skin healthy, moisturized and resilient. Wash gently and revitalize skin with microbiome-gentle Dove;" and

- "What you eat isn't the only thing that may affect your skin's microbiome – skin's living protective layer."



12. The relevant front label statements include "Skin Natural Nourishers," "Instantly Soft Skin, Lasting Nourishment," "Nourishing Body Wash," and "Moisture Renew Blend."



13. Consumers understand the Product's microbiome claims to mean that its effects go beyond cleansing and moisturizing skin and have specific additional protective benefits specifically stemming from their effect on the skin microbiome.

14. The statement, "skin's living protective layer," gives consumers the impression that the Product will keep the microbiome in an optimum state to protect the skin.

5

15. The statement "Microbiome Gentle" tells consumers the Product will not be "harsh or severe" in its application to their skin.[4]

16. However, the Product is not "microbiome gentle" because it contains numerous ingredients which trigger negative skin reactions.

17. This was the conclusion of the Advertising Standards Authority ("ASA"), when evaluating Defendant's microbiome claims for Dove products, in January 2021.

18. The ASA concluded that consumers were likely to understand the Product's use of the word "nourish" to mean it provided a direct benefit to the microbiome.

19. The ASA concluded that Defendant was unable to offer competent and reliable evidence supporting its claims that the Product could provide tangible benefits to the microbiome.

20. However, scientific studies are not required to conclude the Product is unable to have the positive effect on the microbiome as Defendant claims.

21. The back of the Product lists the ingredients, which include essential oils, fragrances, preservatives, and surfactants, which are incompatible with maintaining a balanced microbiome.[5]

**WHAT'S IN HERE?** WATER (AQUA), COCAMIDOPROPYL BETAINE, SODIUM HYDROXYPROPYL STARCH PHOSPHATE, LAURIC ACID, SODIUM LAUROYL GLYCINATE, SODIUM LAUROYL ISETHIONATE, HYDROGENATED SOYBEAN OIL, GLYCINE SOJA (SOYBEAN) OIL, SODIUM CHLORIDE, GLYCERIN, FRAGRANCE (PARFUM), STEARIC ACID, PALMITIC ACID, PHENOXYETHANOL, GUAR

---

[4] Google search, "gentle definition."
[5] 'Microbiome-friendly' – What does this label mean in cosmetics?

6

HYDROXYPROPYLTRIMONIUM CHLORIDE, CITRIC ACID, BHT, TETRASODIUM EDTA, IODOPROPYNYL BUTYLCARBAMATE, LINALOOL, LIMONENE, HEXYL CINNAMAL, COUMARIN, CITRONELLOL, BENZYL ALCOHOL, ALPHA-ISOMETHYL IONONE.

22. The Product's most predominant ingredient after water is cocamidopropyl betaine ("CAPB"), a surfactant.

23. According to the Environmental Working Group ("EWG"), CAPB is restricted in cosmetics and is unsafe when it is not thoroughly rinsed off the skin.

24. CAPB is a common trigger for skin conditions such as eczema, psoriasis, rosacea, contact dermatitis as well as eye irritation.

25. Sodium lauroyl glycinate is another surfactant which is known to be disruptive to the microbiome, because of its pH level.

26. The Product contains fragrance and essential oil ingredients, listed as "FRAGRANCE," "LIMONENE" and "HEXYL CINNAMAL."

27. The Product contains BHT, a preservative.

28. The Product cannot be "microbiome gentle" since it contains ingredients known to be disruptive to a healthy and stable microbiome.

29. Reasonable consumers must and do rely on defendant to honestly describe the attributes of the Product.

30. Defendant misrepresented the Products through affirmative statements, half-truths, and omissions, regarding the Product's effect on the user's microbiome.

31. Defendant sold more of the Product and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

32. Had plaintiff and the proposed class members known the truth, they would not have bought the Product or would have paid less for it.

33. Plaintiff paid more for the Product based on its claims to be "microbiome gentle" and contain "skin-natural nourishers."

34. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $5.99 for 22 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

35. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

36. Plaintiff Aliyah Anderson is a citizen of New York.

37. Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, Bergen County, New Jersey.

38. Diversity exists because plaintiff Aliyah Anderson and defendant are citizens of different states.

39. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

40. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – plaintiff's purchase of the Product.

41. Venue is further supported because many class members reside in this District.

## Parties

42. Plaintiff Aliyah Anderson is a citizen of Mount Vernon, Westchester County, New York.

43. Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Englewood Cliffs, New Jersey, Bergen County.

44. Defendant is the world's largest consumer packaged goods company, which owns hundreds of iconic brands, from Ben and Jerry's Ice Cream to Axe Body Spray to Dove cosmetic and personal care products.

45. The Product is sold to consumers from retail and online stores of third-parties across the country.

46. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, including at Costco, 1 Industrial Ln, New Rochelle, NY 10805, between June and July 2020.

47. Plaintiff bought the Product at or exceeding the above-referenced price because she wanted to buy a product that was gentle on her microbiome and believed that the Product would nourish her microbiome.

48. Plaintiff relied on the Product's labeling, and Defendant's social media advertising, and Defendant's website.

49. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

50. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

51. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition.

Class Allegations

52. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

53. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

54. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

55. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

56. Plaintiff is an adequate representative because her interests do not conflict with other members.

57. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

58. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

59. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

60. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

61. Plaintiff incorporates by reference all preceding paragraphs.

62. Plaintiff and class members desired to purchase products with the attributes highlighted by the labeling and marketing – that would have a positive effect on, and be gentle to, their microbiome.

63. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

64. Defendant misrepresented the Product through its statements, omissions, ambiguities, half-truths and/or actions.

65. Defendant intended that Plaintiff rely upon Defendant's deceptive conduct.

66. Defendant knew or should have known that its representations about the Product's components and qualities were material and likely to mislead consumers.

67. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

68. Plaintiff incorporates by reference all preceding paragraphs.

69. The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that it possessed substantive, functional, qualitative, compositional, organoleptic, sensory, physical and health-related attributes which it did not.

70. Defendant warranted that the Product would be beneficial to the microbiome of purchasers.

71. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

72. This duty is based on Defendant's outsized role in the market for this type of Product – custodian of one of the oldest brands of personal care products in the country and world.

73. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees, as a result of the ASA's determination that its microbiome claims were misleading to consumers.

74. Defendant received notice and should have been aware of these misrepresentations due to complaints by regulators and consumers to its main office over the past several years.

75. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

76. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Defendant had a duty to truthfully represent the Product, which it breached.

79. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type, in the form of scientific studies it alleged supported its position, when it knew this position was not tenable.

80. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

81. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

82. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

85. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

86. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: September 21, 2021

                                              Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com