UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALIYAH ANDERSON, individually and on
behalf of all others similarly situated,

                                    Plaintiff,

            v.

UNILEVER UNITED STATES, INC.,

                                    Defendant.

No. 21-CV-3117 (KMK)

OPINION & ORDER

---

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck, NY
*Counsel for Plaintiff*

John Vales, Esq.
Catharine Luo, Esq.
Dentons US, LLP
New York, NY
*Counsel for Defendant*

Michael Duvall, Esq.
Dentons US, LLP
Los Angeles, CA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Aliyah Anderson ("Plaintiff") brings this putative class action against Unilever

United States, Inc. ("Defendant"), alleging that the labeling on Defendant's "Deep Moisture

Bodywash" is deceptive and misleading.  (*See generally* First Am. Compl. ("FAC") (Dkt.

No. 13).)  Plaintiff brings claims for damages against Defendant for (1) violation of §§ 349 and

350 of the New York General Business Law ("GBL"), N.Y. G.B.L. §§ 349, 350; (2) violation of

the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq.; (3) common law

breach of express warranty; (4) common law breach of the implied warranty of merchantability;
(5) common law negligent misrepresentation; (6) common law fraud; and (7) unjust enrichment.
(*See id.* ¶¶ 61–88.)  Before the Court is Defendant's Motion To Dismiss the FAC (the "Motion").
(*See* Not. of Mot. (Dkt. No. 22).)  For the foregoing reasons, the Motion is granted in part and
denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from the FAC and are assumed to be true for the purposes
of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension
Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant is the world's largest consumer packaged goods company and owns hundreds
of brands, including Dove cosmetic and personal care products.  (*See* FAC ¶ 44.)  Included in
Dove's product line is a "Deep Moisture Bodywash" (the "Product"), which—as relevant to this
Action—Defendant represents as containing "skin-natural nourishers" and being "microbiome
gentle."[1]  (*Id.* ¶ 1.)  The Product's label includes a number of representations to this effect.
Specifically, the Product's front label includes the following statements: "deep moisture"; "skin-
natural nourishers"; "instantly soft skin, lasting nourishment"; "moisture renew blend"; and
"nourishing body wash."  (*Id.* ¶ 12.)  The back label includes, inter alia, a statement titled "The
Dove Difference," which reads: "Our moisturizing and microbiome gentle formula provides

---

[1] The skin's microbiome consists of "a community of billions of friendly living
microorganisms, also known as skin flora" and has been described by Defendant as "an invisible
eco-system that lives on the skin that's working to help keep it healthy and in good condition."
(*See* FAC ¶¶ 8–9 (citations omitted).)

instant softness and lasting care for your skin."  (*Id.* ¶ 10.)  It also features a graphic with the

phrase "microbiome gentle" next to an icon of a double helix.  (*Id.*)



(*See id.* ¶¶ 10, 12.)

Plaintiff alleges that the Product's advertisements "promote its benefits toward the

microbiome" by including representations such as: "Start your year with a healthy microbiome";

"Your microbiome is a protective layer that helps keep skin healthy, moisturized[,] and resilient.

Wash gently and revitalize skin with microbiome-gentle Dove"; and "What you eat isn't the only

thing that may affect your skin's microbiome—skin's living protective layer."  (*Id.* ¶ 11.)



(*See id.*)

Plaintiff alleges that consumers understand the Product's microbiome claims to mean that the Product's effects "go beyond cleansing and moisturizing skin[,] and have specific additional protective benefits stemming from [the Product's] effect on the skin microbiome."  (*Id.* ¶ 13.) Specifically, Plaintiff alleges that consumers believe that the Product will not be "harsh or severe" in its application to the skin and will keep their microbiome "in an optimum state to protect the skin."  (*Id.* ¶¶ 14–15.)  However, Plaintiff alleges that the Product, in fact, is not microbiome gentle because it contains numerous ingredients which trigger negative skin reactions and are incompatible with maintaining a balanced microbiome, including essential oils, fragrances, preservatives, and surfactants.  (*See id.* ¶¶ 16, 21, 28.)  Some examples of these

ingredients are: (1) coccamidopropyl betaine ("CAPB"), which is unsafe when not thoroughly rinsed off the skin; and (2) sodium lauroyl glvcinate, which is known to be disruptive to the microbiome because of its pH level.  (*See id.* ¶¶ 22–25.)

Plaintiff also alleges that consumers expect cosmetic products such as the Product, which are self-described as "microbiome gentle," to contain 100% natural ingredients, because consumers believe that synthetic ingredients are harmful to the skin's microbiome.  (*See id.* ¶¶ 6–7.)  And, Plaintiff appears to imply that the Product does not contain 100% natural ingredients. (*See id.* ¶¶ 21–27.)

Between June and July 2020, Plaintiff purchased the Product "at or exceeding" $5.99 "on one or more occasions" from various locations, including at Costco, 1 Industrial Lane, New Rochelle, NY 10805, because "she wanted to buy a product that was gentle on her microbiome and believed that the Product would nourish her microbiome."  (*Id.* ¶¶ 34, 46–47.)  In purchasing the Product, Plaintiff alleges she "relied on the Product's labeling, . . . Defendant's social media advertising, and Defendant's website" and "would not have purchased the Product in the absence of Defendant's misrepresentations and omissions."  (*Id.* ¶¶ 48–49.)  Plaintiff alleges that Defendant sold more of the Product at a higher price than it would have in the absence of Defendant's representations, and Plaintiff paid more for the product based on the "microbiome gentle" and "skin-natural nourish[ing]" claims.  (*Id.* ¶¶ 31–33.)

B.  Procedural History

Plaintiff filed her initial Complaint on April 10, 2021.  (*See* Compl. (Dkt. No. 1).)  On August 31, 2021, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss the original Complaint, (*see* Dkt. No. 8), but on September 21, 2021, Plaintiff filed the FAC, (*see* FAC).  On October 12, 2021, Defendant filed another pre-motion letter in anticipation of filing a

motion to dismiss the FAC.  (*See* Dkt. No. 14.)  Following Plaintiff's response to Defendant's

pre-motion letter, (*see* Dkt. No. 15), the Court held a pre-motion conference on November 4,

2021, (*see* Dkt. (minute entry for Nov. 4, 2021)).[2]  Pursuant to the briefing schedule adopted at

the conference, Defendant filed the instant Motion on December 3, 2021.  (*See* Not. of Mot.;

Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 24); Decl. of

Michael J. Duvall in Supp. of Mot. To Dismiss (Dkt. No. 23).)  Plaintiff filed her Opposition on

January 7, 2022, (*see* Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") (Dkt.

No. 25)), and Defendant filed its Reply on January 21, 2022, (*see* Def.'s Reply Mem. of Law in

Supp. of Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 26)).  Between February 25, 2022

and April 18, 2022, Defendant filed five notices of supplemental authority with the Court.  (*See*

Dkt. Nos. 27–31.)

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure

12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not

need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed,

Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] On November 5, 2021, Plaintiff filed a letter withdrawing her claim for injunctive relief
based on the discussion held on the record during the November 4, 2021 pre-motion conference.
(*See* Dkt. No. 21.)

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial

notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

Finally, fraud claims—including common law fraud claims—are subject to the heightened pleading standard set forth in Rule 9(b).  *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." (collecting cases)).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52, (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Pilkington N. Am. Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)).

### B.  Analysis

Defendant argues that (1) Plaintiff's GBL claims fail because no reasonable consumer would interpret the phrase "microbiome gentle" to mean that every ingredient in the Product is non-synthetic or gentle to the skin or its microbiome, (*see* Def.'s Mem. 7–16); (2) Plaintiff has failed to state a claim for breach of express warranty because Plaintiff failed to provide Defendant with pre-suit notice, (*see id.* at 18); (3) Plaintiff has failed to state a claim for breach

of the implied warranty of merchantability because Plaintiff has not alleged a direct personal injury from using the Product and is not in privity with Defendant, (*see id.* at 19); (4) Plaintiff's MMWA claim fails because Plaintiff has failed to state a cognizable claim for breach of an express or implied warranty under state law, (*see id.* at 21); (5) Plaintiff cannot plead negligent misrepresentation because Plaintiff has no special or privity-like relationship with Defendant, (*see id.* at 19–21); (6) Plaintiff has failed to plead fraud with particularity, as required under Rule 9(b), (*see id.* at 17–18); and (7) Plaintiff's claim for unjust enrichment must be dismissed as duplicative, (*see id.* at 21).

The Court addresses each argument in turn, beginning with Defendant's argument as to Plaintiff's GBL claims.

### 1.  New York General Business Law § 349 and 350 Claims

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'"  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. G.B.L. §§ 349, 350).  "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (alteration in original) (citation omitted)).  To state a claim under either section, "a

plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (adopting the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

### a.  Consumer-Oriented Conduct

Defendant appears to concede—or at least, does not contest for purposes of its Motion— that Defendant's conduct was consumer-orientated.  (*See generally* Def.'s Mem.)  "A defendant engages in 'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or harm to the public interest.'"  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  This requirement is liberally construed, *id.*, and "may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  Here, Plaintiff alleges that Defendant "manufactures, distributes, markets, labels[,] and sells" the Product "to consumers from retail and online stores of third-parties across the country."  (*See* FAC ¶¶ 1, 45.)  These allegations are sufficient to satisfy the first element of Plaintiff's GBL claim.  *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (observing that GBL §§ 349 and 350 "apply to virtually all economic activity, and their application has been correspondingly broad" (footnote omitted) (collecting cases)); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000)

(noting that the "consumer-oriented" requirement may be satisfied "by a showing that the practice has a broader impact on the consumer at large").

### b.  Materially Misleading Conduct

Defendant instead largely focuses on the second element of Plaintiff's GBL claims, arguing that Plaintiff cannot state a cognizable claim for violations of GBL §§ 349 and 350 because no reasonable consumer would find Defendant's representations as to the Product on the Product's label and in advertising to be misleading.  (*See* Def.'s Mem. 7–15.)

To survive a motion to dismiss, plaintiffs "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at 160 (internal quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions").   "While it is possible for a court to decide this inquiry as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases).  "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20

11

(E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-
2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (explaining that claims which
"border on fantasy" require "dismissal as a matter of law").

Plaintiff primarily alleges that Defendant's representations that the Product is gentle to
the skin and healthy for the skin's microbiome are misleading because the Product contains
ingredients that trigger negative skin reactions.  (*See* FAC ¶¶ 8–28.)  Secondarily, Plaintiff
appears to allege that Defendant's representations as to the Product are additionally misleading
because they lead consumers to believe that the Product contains 100% natural ingredients, when
in reality it contains synthetic ingredients—which consumers believe are harmful to the skin's
microbiome.  (*See id.* ¶¶ 6–7.)  Defendant argues that reasonable consumers would understand
that Defendant's representation, for instance, that the Product is "microbiome gentle" means that
the Product *as a whole* is "microbiome gentle," and not that each constituent ingredient is
microbiome gentle (and therefore, non-synthetic).  (Def.'s Mem. 7–14.)  Of course, Defendant
will have an opportunity to test this hypothesis in discovery, but at the motion to dismiss stage,
"[w]here a representation is capable of two possible reasonable interpretations," the Court is not
free to reject "the misleading one . . . simply because there is an alternative, non-misleading
interpretation." *Fishon v. Peloton Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *7
(S.D.N.Y. Nov. 9, 2020).  Here, the Court finds that the question of whether Defendant's
representations as to the Product are materially misleading or deceptive is a question of fact that
cannot be resolved on a motion to dismiss.  *See, e.g.*, *Eidelman*, 2017 WL 4277187, at *1, *4
(ruling that "the [c]ourt cannot conclude as a matter of law that *no reasonable consumer* on this
motion to dismiss . . . could be misled into believing that" a laundry detergent label stating that it
is "from the #1 Detergent Brand Recommended by Dermatologists for Sensitive Skin"

"indicates that both the brand, and in turn, the brand product bearing the actual [l]abel, are recommended by dermatologists for sensitive skin" (emphasis in original)); *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *6 (E.D.N.Y. Aug. 17, 2015) (finding that "[the] plaintiffs have sufficiently alleged that [the defendant's] 'Naturals' representations on the [p]roducts' labeling misled them into believing that [the defendant's] [p]roducts were natural when, in fact, the [p]roducts were filled with unnatural, synthetic ingredients"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478–80 (S.D.N.Y. 2014) (ruling that "the [c]ourt cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer" where the product labels stated that the defendant's personal care products were "Active Naturals" and yet contained synthetic ingredients).  None of Defendant's arguments to the contrary changes the Court's conclusions.

First, Defendant argues that its representations as to the Product are not misleading because the term "microbiome gentle" is grammatically applied to the Product as a whole, in such phrases as "our moisturizing and microbiome gentle ***formula***" and "microbiome-gentle ***Dove***."  (Def.'s Mem. 7–11 (emphases in original); *see also* Def.'s Reply Mem. 3.)  But the relevant question here is not whether Defendant's representations as to the Product are, formally speaking, correct, but whether a reasonable consumer might be misled.  *See Twohig*, 519 F. Supp. 3d at 160.  And, the Court is not convinced at this preliminary stage of the proceedings that it would be "patently implausible," *Eidelman*, 2017 WL 4277187, at *4, for a reasonable consumer to conclude that a "microbiome gentle ***formula***" is made up of only microbiome gentle ingredients.  Moreover, in making this argument, Defendant relies heavily and almost exclusively on *Souter v. Edgewell Personal Care Co.*, (*see, e.g.*, Def.'s Mem. 7–8), but that case is from the Southern District of California and analyzes *California* consumer protection law, *see*

13

542 F. Supp. 3d 1083, 1094–95 (S.D. Cal. 2021).  And, in any event, this Court does not agree

with the *Souter* court's conclusion that no reasonable consumer could interpret the terms

"hypoallergenic" and "gentle" to mean that a product—in that case, a hand wipe—was "*entirely*

*free* of allergens or skin irritants."  *Id.* at 1094 (emphasis in original).[3]

       Second, in a restatement of the same argument, Defendant argues that Plaintiff's theory

of deceptive conduct here is implausible because it suffers from three logical fallacies: begging

the question, the fallacy of composition, and the fallacy of division.  (*See* Def.'s Mem. 11–14;

Def.'s Reply Mem. 3–4.)  But, again, the question before the Court is not whether it is correct (or

the result of airtight logical reasoning) to interpret Defendant's representations as to the Product

in the manner that Plaintiff alleges, but whether a reasonable consumer *could* interpret

Defendant's representations as to the Product in the manner that Plaintiff alleges.  *See Twohig*,

519 F. Supp. 3d at 160.  And, as explained above, the Court concludes that this is a question of

fact that cannot be resolved on a motion to dismiss.  Moreover, in making this argument,

Defendant again relies heavily and almost exclusively on a case that this Court does not find

persuasive, (*see* Def.'s Mem. 12–14):  *Rosen v. Unilever U.S., Inc.*, No. 09-CV-2563, 2010 WL

4807100 (N.D. Cal. May 3, 2010).  *Rosen* was decided by a court in the Northern District of

California, and like *Souter*, analyzes *California* consumer protection law.  *See id.* at *1.  And, in

any event, this Court does not share the *Rosen* court's conclusion that no reasonable consumer

---

[3] However, it is worth noting that Plaintiff's efforts to distinguish *Souter* played no role in the Court's determination that *Souter* is not persuasive.  Plaintiff argues that because the products at issue in *Souter* were antibacterial wipes, "describing this product as 'hypoallergenic' or 'gentle' is by definition, inconsistent, because consumers know that in order to destroy bacteria and germs, a product must contain ingredients which have astringent properties."  (Pl.'s Mem. 6.)  And Plaintiff argues that "nothing on Defendant's 'Microbiome Gentle' body wash states, or even alludes to, its astringent, or harsh effects."  (*Id.*)  But the Court must point out that the Product is *a body wash*, which consumers expect to contain—at the very least—cleansers.

could interpret the phrase "Made with a Blend of Nutritious Oils" to mean that a product—in that case, a butter-substitute product—contains only nutritious oils. *Id.* at *4–6.

Third, Defendant argues that any potential ambiguity resulting from Defendant's use of the phrase "microbiome gentle" on the Product's label is resolved by a reference to the Product's ingredient list, which appears right below the statement. (*See* Def.'s Mem. 14–15; Def.'s Reply Mem. 5.) While Defendant is correct that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial" and for that reason, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception," *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013), the Court fails to understand how the ingredient list on the Product could serve as a disclaimer here. It is common knowledge that cosmetic and personal care products, like the Product, are typically made up of a long list of ingredients, most of which are referred to by a scientific name with which an ordinary consumer would be unfamiliar. Thus, Defendant's theory that a reasonable consumer could simply consult the ingredient list to confirm that the Product is microbiome gentle (and non-synthetic) would require the Court to credit the notion that a reasonable consumer would be familiar with what the many ingredients listed are *and* those ingredients' properties, origins, and effects on the skin. This is plainly untenable. *Cf. Wallace v. Wise Foods, Inc.*, No. 20-CV-6831, 2021 WL 3163599, at *2 (S.D.N.Y. July 26, 2021) (holding that a reasonable consumer could not be misled into believing that sour cream and onion flavored potato chips did not contain artificial flavor when "[t]he ingredients label . . . explains that the chips contain cheddar cheese and sour cream while informing that they contain lesser amounts of artificial flavoring"); *Devane v. L'Oréal USA, Inc.*, No. 19-CV-4362, 2020 WL 5518484, at *4–6 (S.D.N.Y. Sept. 14, 2020) (holding that a reasonable consumer could not be misled into

believing haircare products contained keratin when "none of the ingredients listed on either bottle includes keratin as an ingredient").

Fourth and finally, Defendant urges the Court to dismiss Plaintiff's GBL claims because Plaintiff mischaracterizes the studies and reports included in the FAC to support Plaintiff's claims. (*See* Def.'s Mem. 8–11; Def.'s Reply Mem. 1–3.) Because the Court has not relied on these various studies and reports in concluding that Plaintiff has adequately alleged materially misleading conduct, the Court need not determine whether Plaintiff has properly characterized them. Defendant will be free to explore this issue—among, undoubtedly, many others—during discovery.

Accordingly, the Court finds that Plaintiff has adequately pled the second element of her GBL claims.

### c. Injury

With respect to the third element of Plaintiff's GBL claims, Defendant argues that Plaintiff has not adequately pled a price premium injury because her allegations as to this theory are conclusory. (*See* Def.'s Mem. 15–16.) Plaintiff argues that her allegation that she would have paid less for or not purchased the Product had she known it was not "microbiome gentle" is sufficient at the motion to dismiss stage, (*see* Pl.'s Mem. 8), and the Court agrees with Plaintiff.

"An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (alterations omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 278 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)). "A plaintiff can show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'" *Id.* (quoting *Izquierdo v. Mondelez Int'l*

*Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2017)).  However, "[t]o

allege injury under a price premium theory, a plaintiff must allege not only that [the] defendants

charged a price premium, but also that there is a connection between the misrepresentation and

any harm from, or failure of, the product."  *Id.* (quotation marks omitted); *see also Sabatano v.*

*Iovate Health Scis. USA Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22,

2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a

specific advertisement or public pronouncement upon which the consumer relied." (citation

omitted)); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("In order to

make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the

time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard*

*Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).  Typically, a plaintiff makes this allegation by

asserting that a particular product was marketed as having a special quality, that the marketing

enabled the company to charge a premium for the product, and that the plaintiff paid this

premium and later discovered that the product "did not, in fact, have the marketed quality."

*Duran*, 450 F. Supp. 3d at 350 (collecting cases).

  Here, Plaintiff alleges that she "paid more for the Product based on its claims to be

'microbiome gentle' and [that it] contain[s] 'skin-natural nourishers.'"  (FAC ¶ 33.)  Plaintiff

also alleges that if she had known the Product was not gentle and nourishing to the skin's

microbiome, she "would not have bought the Product or would have paid less for it."  (*Id.* ¶ 32.)

At this early stage of the case, these allegations suffice to allege a price premium theory of

injury.  *See Fishon*, 2020 WL 6564755, at *10–11 (allegations that the plaintiffs "would not have

purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n]

the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage");

*Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it" (citations omitted)); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory (citation and quotation marks omitted)); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it" (footnote and quotation marks omitted)).

Defendant argues that Plaintiff's allegations as to her price premium theory of injury are "merely boilerplate recitations of the formula for calculating a price premium" that cannot be credited on a motion to dismiss, (Def.'s Mem. 16 (quoting *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 114–15 (E.D.N.Y. 2020)), but none of the authorities Defendant cites supports this conclusion.[4] For example, while the *Wright* court held that the plaintiffs' allegations as to a supposed price premium were boilerplate and conclusory and thus could not support a claim that the plaintiffs "actually paid a price premium for any of the products," in so doing, the *Wright* court distinguished the case before it from cases which "involved claims where the plaintiffs (1) directly identified the products at issue and (2) based their allegations on

---

[4] Nor is the Court convinced by Defendant's attempts to distinguish *Fishon* and other, similar cases via a simple recitation of the *Iqbal* standard.  (*See* Def.'s Mem. 16 n.5.)

material qualities, such as size or ingredients." *Wright*, 439 F. Supp. 3d at 114–15.  The *Wright*

court explained that as to the latter category of cases, "the courts could easily infer the loss

suffered by the plaintiffs from the absence of those qualities from the purchased products."  *Id.* at

115.  The instant Action clearly falls into this latter category of cases because Plaintiff has

identified the product at issue and her allegations are based on the material quality that the

Product was represented as "microbiome gentle," which Plaintiff alleges resulted in the price

premium that caused her injury.  (*See* FAC ¶¶ 31–34.)  The other case cited by Defendant,

*Colella v. Atkins Nutritionals, Inc.*, (*see* Def.'s Mem. 16), articulates the principle that "[s]imply

reciting the word 'premium' multiple times in [a] [c]omplaint does not make [the] [p]laintiffs'

injury any more cognizable," but Plaintiff here does not simply invoke the word "premium"

without identifying a plausible basis for paying more than she otherwise would have.  348

F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (alterations omitted).  Rather, Plaintiff alleges that she

paid a premium for the Product based on Defendant's representation that the Product was

"microbiome gentle," and therefore was injured in the amount of the premium because the

Product was allegedly not, in fact, "microbiome gentle."  (*See* FAC ¶¶ 31–34.)

Therefore, the Court finds that Plaintiff has adequately pled the injury prong of her GBL

claims.  Accordingly, the Court finds that Plaintiff has adequately pled each element of her

deceptive labeling claims under GBL §§ 349–50.  These claims survive the instant Motion.

### 2.  Breach of Warranty Claims

#### a.  Breach of Express Warranty

"An express warranty is an affirmation of fact or promise made by the seller to the buyer

which relates to the goods and becomes part of the basis of the bargain."  *Barreto*, 518

F. Supp. 3d at 806 (quotation marks omitted).  To adequately state a claim for breach of an

express warranty under New York law, plaintiffs must plead "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach." *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg*, 8 F. Supp. 3d at 482).  In addition, New York law requires that the buyer, "'within a reasonable time after he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy.'" *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2-607(3)(a)).  To satisfy this notice requirement, a plaintiff must "alert [the] defendant that the transaction was troublesome," but need not "include a claim for damages or threat of future litigation." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021) (alterations and quotation marks omitted).  Although "[t]he sufficiency and timeliness of the notice is generally a question for the jury," *Tomasino*, 44 F. Supp. 3d at 260 (citation omitted), to adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time," *Grossman*, 516 F. Supp. 3d at 283.

Plaintiff has failed to adequately allege that she provided Defendant with any manner of pre-suit notice, only vaguely alleging that "Plaintiff provided or will provide notice to [D]efendant, its agents, representatives, retailers, and their employees" and that "Defendant received notice and should have been aware of these misrepresentations due to complaints by regulators and consumers to its main office over the past several years."  (FAC ¶¶ 73, 74.)  These allegations are insufficient to plead pre-suit notice and avoid dismissal.  *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (finding allegation that "[the]

[d]efendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years" to be "too conclusory and . . . unsupported by any specific factual allegations" to satisfy the notice requirement for suit (quotation marks omitted)); *Grossman*, 516 F. Supp. 3d at 283 (finding that the plaintiff's allegation that "within a reasonable time after they knew or should have known of [the] [d]efendant's breach, [the] [p]laintiff, on behalf of herself and [c]lass [m]embers, placed [the] [d]efendants on notice of their breach, giving [the] [d]efendants an opportunity to cure their breach, which they refused to do" was "insufficient to plead pre-suit notice" (quotation marks omitted)); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *2 (S.D.N.Y. Mar. 30, 2018) (explaining that "[p]roper factual allegations should, at least, include the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant," and dismissing claim for breach of express warranty where "[the] [p]laintiffs failed to allege any facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a reasonable time after its discovery"); *Singleton*, 2016 WL 406295, at *12 (finding that the plaintiff's allegation that "[the] [d]efendant must have been aware of [the] [p]laintiff's false and misleading advertising claims due to similar suits pending against [the] [d]efendant" to be insufficient to plead pre-suit notice because "[the] [p]laintiff was required to inform [the] [d]efendant, within a reasonable time, of the alleged breach involving his own purchase").[5]

---

[5] The Court is unconvinced by Plaintiff's argument that Plaintiff has met her burden because the Court must accept Plaintiff's allegation that she "provided or will provide notice" as true on a motion to dismiss.  (Pl.'s Mem. 10.)  While it is, of course, correct that a Court must accept all of a plaintiff's allegations as true on a motion to dismiss, the allegations must be *well-pled*.  As the Court explained above, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678.

Plaintiff's arguments that pre-suit notice is not required or, in the alternative, that

Plaintiff's original Complaint constitutes notice are unavailing.  (*See* Pl.'s Mem. 9.)  While

Plaintiff is correct that there is a "line of New York cases suggesting that the notice requirement

does not apply to retail sales," *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371, 2000 WL

33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (citing *Fischer v. Mead Johnson Labs.*, 341

N.Y.S.3d 257, 259 (App. Div. 1973)), numerous courts in the Second Circuit have explained that

"this exception appears to be exclusively applied where the party alleges physical, in addition to

economic, injury," *Colella*, 348 F. Supp. 3d at 143–44 (collecting cases); *see also Colpitts*, 527

F. Supp. 3d at 589 (explaining that "[b]ecause [the] [p]laintiff only alleges economic injury in

the form of a price premium paid for the [p]roduct, this exception—to the extent it exists at all—

is inapplicable," and dismissing breach of express warranty claim for failure to allege pre-suit

notice).  And, while Plaintiff is correct that there is limited authority for the proposition that a

plaintiff's pleadings could constitute pre-suit notice under certain circumstances, (*see* Pl.'s Mem.

9), the Court is persuaded by Judge Failla's reasoning in *Lugones v. Pete & Gerry's Organic,*

*LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020), in which she explained that the case from which this

limited authority stems (and on which Plaintiff relies)—*Panda Capital Corp. v. Kopo Int'l, Inc.*,

662 N.Y.S.2d 584 (App. Div. 1997)—does not stand "for a broad rule that a filed complaint

qualifies as sufficient and timely notice."  440 F. Supp. 3d at 244–45.

Accordingly, Plaintiff's claim for breach of express warranty is dismissed.

---

Plaintiff's argument is not helped by Plaintiff's citation to *Suarez v. California Natural Living, Inc.*, No. 17-CV-9847, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019), where the court referred to this principle in crediting the plaintiff's allegation that she "mailed defendant a 'Pre-Suit Notice letter' on June 2, 2017, asserting defendant 'breached the express warranty' under New York law 'because the [p]roduct does not contain Natural Elements.'"  *Id.* at *9 (citation omitted).  Plaintiff's vague and conclusory allegation that she "provided or will provide notice" includes no such factual specificity.  As such, *Suarez* is inapposite.

22

b.  Breach of the Implied Warranty of Merchantability

"Under the New York Uniform Commercial Code . . . , 'a warranty that the goods shall

be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

goods of that kind.'"  *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 8 (S.D.N.Y. 2020)

(quoting N.Y. U.C.C. § 2-314(1)).  "To be merchantable, goods 'must be fit for the ordinary

purposes for which such goods are used; and conform to the promises or affirmations of fact

made on the label or container if any.'"  *Id.* at 9 (alterations omitted) (quoting N.Y. U.C.C. § 2-

314(2)).  "However, no implied warranty will extend from a manufacturer to a remote purchaser

not in privity with the manufacturer where only economic loss and not personal injury is

alleged."  *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-CV-1228, 2020 WL 777462, at

*11 (N.D.N.Y. Feb. 18, 2020) (quotation marks omitted); *accord Aracena v. BMW of N. Am.*

*LLC*, 71 N.Y.S.3d 614, 616 (App. Div. 2018) (same) (collecting cases); *see also Pyskaty v. Wide*

*World of Cars, LLC*, No. 15-CV-160, 2019 WL 917153, at *11 (S.D.N.Y. Feb. 25, 2019) (noting

the "well-established principle in New York that, absent privity, a plaintiff cannot recover

damages for economic loss based upon breach of implied warranty").

In her Opposition, Plaintiff disingenuously argues that the privity requirement is satisfied

here despite the fact that Plaintiff is indisputably a remote purchaser (having purchased the

Product from a third-party retailer, (*see* FAC ¶ 46 ("Plaintiff bought the Product on one or more

occasions . . . from one or more locations, including at Costco.")))), because "the 'specific

representations' on the [Product's] packaging . . . are sufficient to overcome strict privity,"

relying on the New York Court of Appeals' decision in *Randy Knitwear v. American Cyanamid*

*Co.*, 181 N.E.2d 399 (N.Y. 1962).  (*See* Pl.'s Mem. 10.)  However, as this Court has explained

on several occasions—including in a case brought by Plaintiff's counsel, no less—*Randy*

*Knitwear* dispensed with the privity requirement for claims of breach of *express* warranty.  *See Randy Knitwear*, 181 N.E.2d at 401 ("We are now confronted with the . . . question whether the traditional privity requirement shall . . . be dispensed with in an action for breach of express warranty by a remote purchaser."); *see also Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *13 (S.D.N.Y. Mar. 18, 2022) (citing *Randy Knitwear* for "dispensing with the requirement of privity for claims of breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods" (alterations and quotation marks omitted)); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 111 (S.D.N.Y. 2021) (same).

As the Court noted above, the privity requirement for claims of breach of *implied* warranty where, as here, only economic injury is alleged, is alive and well.  *See, e.g.*, *Colangelo*, 2020 WL 777462, at *11; *see also Catalano v. BMW of N. Am.*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) ("Although New York has long since dispensed with the privity requirement for express warranty claims, *see Randy Knitwear* . . . , New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic."). And, remote purchasers, like Plaintiff, definitionally are not in privity with the manufacturers of the products that they buy.  *See, e.g.*, *Zachmann v. Coleman Co.*, No. 20-CV-9146, 2022 WL 161480, at *5 (S.D.N.Y. Jan 18, 2022) ("A remote purchaser, such as a retail purchaser, is not in privity with a good's manufacturer." (citing *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015))); *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 408 (App. Div. 2008) (explaining that where the plaintiff purchased a yacht with an engine manufactured by Caterpillar, Inc. from a third-party boat retailer, "there [was] no contract

between [the] plaintiff and Caterpillar" and that "[t]he extensive list of dealers separating [the] plaintiff from Caterpillar renders [the] plaintiff a remote purchaser who is barred as a matter of law from claiming economic damages due to Caterpillar's breach of implied warranties"); *cf. Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62–63 (2d Cir. 1984) (explaining that "[b]ecause [strict products liability] law deems the manufacturer's duty great and the injury inflicted serious, it bends privity of contract requirements to allow remote purchasers to sue the manufacturer," but that an injury based on solely economic loss "is not considered sufficiently severe to warrant the abrogation of the privity requirement").

Accordingly, Plaintiff's claim for breach of the implied warranty of merchantability is dismissed.

### c.  MMWA

"To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law," *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015), because "the federal statute incorporates state law claims for breach of express and implied warranties," *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327, 2015 WL 5686507, at *9 (E.D.N.Y. Sept. 25, 2015); *see also Cosgrove*, 520 F. Supp. 3d at 586 ("At its core . . . the MMWA merely incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." (quotation marks omitted)). Because the Court has already found Plaintiff's claims for breach of express and implied warranty to be subject to dismissal, Plaintiff's claim under the MMWA is similarly dismissed. *See Chiarelli*, 2015 WL 5686507, at *9 (dismissing claims under the MMWA where the plaintiffs had failed to state claims for breach of express or implied warranty); *Garcia*, 127

F. Supp. 3d at 232 (dismissing certain claims under the MMWA where the plaintiffs had failed to state claims for breach of express or implied warranty).

### 4.  Negligent Misrepresentation Claim

"To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that: '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'"  *Brown*, 2021 WL 5446007, at *7 (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)); *see also Sarr*, 2020 WL 729883, at *6 ("Under New York law, 'a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" (alterations omitted) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011))).  "Under the 'duty' element, New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close to approach that of privity.'"  *Brown*, 2021 WL 5446007, at *7 (quoting *Anschutz*, 690 F.3d at 114).  "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the existence of a special relationship capable of giving rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech."  *Id.* (alterations omitted) (quoting *Izquierdo*, 2016 WL 6459832, at *7); *Stoltz*, 2015 WL 5579872, at *25 (explaining that "courts have consistently held that advertisements alone are not sufficient"

to allege the existence of a special relationship (collecting cases)).  The New York Court of Appeals in *Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996), set forth a number of factors to determine whether a special relationship exists: (1) "whether the person making the representation held or appeared to hold unique or special expertise," (2) "whether a special relationship of trust or confidence existed between the parties," and (3) "whether the speaker was aware of the use to which the information would be and supplied it for that purpose," *id.* at 454; *see also Brown*, 2021 WL 5446007, at *7 (same).

The Parties here appear to agree on the standard for stating a cognizable claim for negligent misrepresentation, (*see* Def.'s Mem. 19–21; Pl.'s Mem. 12–13), but disagree as to whether Plaintiff has adequately pled the existence of a "special or privity-like relationship" between Plaintiff and Defendant.  Plaintiff argues that she has adequately pled the existence of a special relationship with Defendant, citing Plaintiff's allegation regarding "Defendant's expertise" as "the 'custodian of one of the oldest brands of personal care products.'"  (Pl.'s Mem. 12 (quoting FAC ¶ 72).)  Defendant argues that this allegation is insufficient to create a special duty owed to Plaintiff, (*see* Def.'s Mem. 20–21; Def.'s Reply Mem. 8), and the Court agrees with Defendant.

Courts have resoundingly held that "[t]he requisite special relationship may not . . . be based solely on [a] [d]efendant['s] status as a manufacturer of the [product] because, if this alone were sufficient, a special relationship would necessarily always exist . . . , which is not the case." *Stoltz*, 2015 WL 5579872, at *25; *see also Sarr*, 2020 WL 729883, at *6 (explaining that the defendant's "status as a trusted brand . . . does not give rise to a duty to impart correct information, as the plaintiffs comprise 'a faceless or unresolved class' of consumers" (alterations omitted) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir.

27

2005) (per curiam))); *Izquierdo*, 2016 WL 6459832, at *9 ("Nothing in the complaint suggests

that the transaction differs in any way from the numerous cases in this District and Circuit in

which courts have held that a basic commercial transaction does not give rise to a special

relationship.  Indeed, the relationship between [the defendant] and [the] [p]laintiffs appears to be

more attenuated than a run-of-the-mill, arms-length commercial transaction because [the]

[p]laintiff did not buy the [c]andy from [the defendant]—they bought it from a movie theater

concession stand.").  Plaintiff here has raised no allegations suggesting any unique or special

circumstances to depart from this general rule.

The Court also agrees with Defendant that the case on which Plaintiff primarily relies for

the notion that Defendant and Plaintiff had a special relationship, *Greene v. Gerber Prods. Co.*,

262 F. Supp. 3d 38 (E.D.N.Y. 2017), (*see* Pl.'s Mem. 13), presented unique circumstances not

present here, (*see* Def.'s Reply Mem. 8).  Namely, in *Greene*, the plaintiffs alleged that the

defendant "was aware of at least one major study that conclusively refuted [the] [d]efendant's

health claim, and that [the] [d]efendant in fact sponsored that study and provided it with staff and

funding." 262 F. Supp. 3d at 76 (quotation marks omitted).  Critically, it was only based on this

allegation of "unique expertise regarding the lack of scientific support for [the] [d]efendant's

representations about infant allergies and atopic dermatitis" that the court found that the

plaintiffs had adequately pled the existence of a special duty of care owed by the defendant to the

plaintiffs despite the court's finding that "[the] [p]laintiffs have not alleged a special relationship

between themselves and [the] [d]efendant" because "they are a faceless or unresolved class of

persons." *Id.* at 76–77.  Here, Plaintiff has not alleged that Defendant had any such unique

expertise or scientific knowledge apart from her vague and conclusory allegation that Defendant

"h[eld] itself out as having special knowledge and experience in the sale of the product type, in

the form of scientific studies it alleged supports its position, when it knew this position was untenable," thus taking advantage of "consumers' cognitive shortcuts" and "trust in [D]efendant, a well-known and respected brand or entity in this sector." (FAC ¶¶ 79–80; *see also* Pl.'s Mem. 12 ("Defendant 'was aware of the use to which the information would be put' since studies show that 'almost 70% of consumers are familiar with the importance of the skin microbiome,' such that it marketed its brand for the purpose of inducing consumers to purchase the Product.").) This is clearly insufficient. *See also Sarr*, 2020 WL 729883, at *6 (finding no special relationship in spite of allegations that the defendant "held itself out as having special knowledge," because "the bases of the plaintiffs' claims . . . were public information" and distinguishing *Greene* (quotation marks omitted)).

Accordingly, Plaintiff's claim for negligent misrepresentation is dismissed.

### 5. Fraud Claim

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). And, as explained above, to adequately plead fraud, plaintiffs must also meet the particularity requirement in Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015). *See also supra* II.A.

Defendant argues that Plaintiff's fraud claim fails because Plaintiff has failed to allege reliance in a non-conclusory manner.  (*See* Def.'s Mem. 18.)  While the Court agrees that Plaintiff's vague allegation that she "relied on the Product's labeling, and Defendant's social media advertising, and [sic] Defendant's website," (FAC ¶ 48), in all likelihood does not pass muster under Rule 12(b)(6), or certainly under Rule 9(b), the Court need not even address this question because the FAC includes even fewer allegations as to scienter.  Liberally construed, the sum total of Plaintiff's allegations as to scienter are that, in general, personal care products with microbiome claims sell at a higher price than personal care products without such claims, (*see id.* ¶¶ 4–5), and that "Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues it described herein, when it knew not doing so would mislead consumers," (*id.* ¶ 85).  However, it is well-settled that a company's general profit motive is insufficient to plead scienter.  *See, e.g.*, *Duran*, 450 F. Supp. 3d at 354 ("[S]imply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent.").  And courts frequently find that allegations such as that "[a] defendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label, when it knew its statements to be not true nor accurate" to be "conclusory" and "fall short of the Rule 9(b) standard."  *Colpitts*, 527 F. Supp. 3d at 585 (quotation marks omitted) (collecting cases).

Accordingly, Plaintiff's fraud claim is dismissed.

### 6.  Unjust Enrichment Claim

"The basic elements of an unjust enrichment claim in New York require proof that (1) [the] defendant was enriched, (2) at [the] plaintiff's expense, and (3) equity and good conscience militate against permitting [the] defendant to retain what [the] plaintiff is seeking to recover."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).  Unjust

enrichment "lies as a quasi-contract claim" that "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quotation marks omitted).  New York's highest court has made clear, however, that "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  Rather, the claim "is available only in unusual circumstances when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*  In other words, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* at 790–91.

The Second Circuit has stated that "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (alteration omitted) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (App. Div. 2008)).  Here, the unjust enrichment claim is premised on the same factual allegations as those supporting Plaintiff's other claims, and Plaintiff has not alleged distinct damages with respect to this claim.  Accordingly, the Court must dismiss Plaintiff's unjust enrichment claim as duplicative.  *See, e.g.*, *Grossman*, 516 F. Supp. 3d at 284–85 (dismissing unjust enrichment claim that "duplicate[d] the plaintiff's other claims, which ar[o]se out [of] identical facts," namely "the defendant's alleged misrepresentation on the [p]roduct packaging"); *Wedra v. Cree, Inc.*, No. 19-CV-3162, 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing unjust enrichment claim that was "duplicative of [the] plaintiff's other claims for material misrepresentations rooted in statutory, contract, and tort law"); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 567–68 (S.D.N.Y. 2016) (dismissing unjust

enrichment claim that "rel[ied] on the same set of facts" underlying the plaintiff's claims for deceptive labeling and breach of express warranty); *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 10, 2016) (dismissing unjust enrichment claim that "overlap[ped] with [the plaintiff's] fraud, fraudulent concealment, express warranty, and [GBL] § 349 claims").

While Plaintiff's observation that "under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency" is correct, (Pl.'s Mem. 13 (alteration omitted) (quoting *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994))), it does nothing to change the Court's conclusion, particularly because the case on which Plaintiff relies, *Henry*, concerned claims of race and gender discrimination, not products liability or unjust enrichment.

Accordingly, Plaintiff's unjust enrichment claim is dismissed.

### III. Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part.  The Clerk of Court is directed to terminate the pending motion.  (*See* Dkt. No. 22.)

Because this is the first adjudication of Plaintiff's claims on the merits, the claims that the Court has found to be subject to dismissal are dismissed without prejudice.  To the extent Plaintiff has a good faith basis for filing a second amended complaint, she must do so within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will result in dismissal of these claims with prejudice, without further notice.

SO ORDERED.

Dated:    June 16, 2022
            White Plains, New York

_____
KENNETH M. KARAS
United States District Judge